UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
DEC 22 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-26-GWU

WILLIAM KEITH,                                                         PLAINTIFF,

VS.                    **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,               DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Keith

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Keith

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

Keith

> pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Keith

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

Keith

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, William Keith, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of diminished visual acuity, a dysthymic disorder, and borderline intellectual functioning. (Tr. 18). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Keith retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 21-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked whether a person of the plaintiff's age of 55 years, "limited" education,[1] and unskilled work experience could perform any jobs if he had no exertional limitations, but would have the following non-exertional restrictions. (Tr. 324). He: (1) would be precluded from work around environmental pollutants such as dust, chemicals, smoke, and noxious gases; (2) would be precluded from any work that required acute bilateral vision; (3) would

---

[1] The ALJ ultimately found that Mr. Keith had a "limited" education (Tr. 23), which may have overestimated his education. Keith testified that he had attended school through the 9th grade, when he was drafted (at age 19) into the Army (Tr. 300-1). However, recent achievement testing showed only second grade reading ability (Tr 267), Whereas there was some indication that Mr. Keith had passed a qualifying examination to get into the armed services (Tr. 325), there is no objective information of record about the difficulty of that test.

7

need to be placed in work that involve simple, non- detailed tasks, where co-worker and public contact would be casual and infrequent, supervision direct and non-confrontational, and changes in the workplace infrequent; and (4) would be considered functionally illiterate. (Tr. 324-5). The VE responded that there were jobs that such a person could perform, such as assembler, bagger, and security guard, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 325).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Keith alleged disability due to problems with his vision, his ability to read, and his back. (Tr. 85). At the first of two administrative hearings, he testified that he worked at a furniture factory until he was terminated on October 12, 2001, and he had never been told the reason. (Tr. 302). He admitted that he would have continued to work if he had not been laid off, that he had accepted six months of unemployment benefits, and that he had put in applications at "a lot of places," but had not been able to get a job because of his lack of education. (Tr. 302-3). He had vision problems, and had a history of cataract surgery in 1999. (Tr. 303-4). He was going to the Adanta mental health clinic for counseling. (Tr. 304).

Although there is an indication in the notes of an ophthalmologist that the plaintiff was complaining of being unable to see out of his right eye in November,

2002, and his right eye visual acuity was apparently measured as 20/100, his left eye was 20/25. (Tr. 246). The ALJ accepted the opinion of a consultative physical examiner, Dr. Stephen Lamb, who examined the plaintiff in June, 2002, and found no abnormalities other than diminished visual acuity, with the right eye being measured as 20/70 at that time; however, the vision out of both eyes combined was 20/30 with glasses. (Tr. 163). Dr. Lamb found evidence of "significant impairment" due to diminished visual acuity, and noted that the plaintiff would likely need cataract surgery, but did not find any other limitations. (Id.). Dr. Stephen Rose, who had perform the cataract surgery in 1999 (Tr. 160-1), reported in June, 2002, that he had seen the plaintiff most recently on the same month, and he was status post replacement lens of the left eye, and had a cataract in the right eye. (Tr. 189). There was "no ocular contraindication for doing work-related activities," however. (Id.).

As far as his psychological condition was concerned, Mr. Keith sought treatment at the Adanta group beginning in March, 2003 and was given an initial diagnosis by the staff psychiatrist, Dr. Alan Myers, of major depressive disorder, and adjustment disorder, and rule out borderline intellectual functioning by estimate. (Tr. 170-3). Dr. Myers assigned a Global Assessment of Functioning (GAF) score of 50. (Tr. 173). A GAF score of 50 represents "serious impairment in social, occupational, or school functioning" according to the Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. Dr. Myers planned to

Keith

treat the plaintiff with psychotherapy and the medication Lexapro. Subsequently, on May 8, 2003, the diagnosis was slightly altered to major depressive disorder, possible anxiety disorder, possible psychotic features, and possible low intellectual functioning, with a GAF score being given as 50-55. (Tr. 220). A GAF score of 51 to 60 represents "moderate difficulty in social, occupational, or school functioning" per the DSM-IV-TR. Mr. Keith reported that he was doing well on his medication, that his sleep and appetite were better, and his mood was improved. (Tr. 215).

On September 11, 2003, Dr. Myers and the plaintiff's counselor, Rebecca Lawless, signed a mental residual functional capacity form indicating that Mr. Keith had "marked" restrictions in many areas of occupational functioning. (Tr. 225-7). Many of the boxes on form had apparently initially been marked under the category of "slight" rather than "marked", and under some categories boxes under "slight," "moderate," and "marked" were all checked. (Id.). The ALJ rejected the conclusion that the plaintiff had marked limitations in any area, citing the changes made on form, the fact that the form did not list the specific causes of the restrictions, and his conclusion that the treatment notes from Adanta did not support this degree of limitation. (Tr. 20). He also complained that the form did not "explain what claimant was able to do." (Id.). The ALJ chose, instead, to accept the diagnoses and restrictions of a consultative psychological examiner, Dr. Gary Maryman, who examined the plaintiff on February 11, 2004 and concluded that Mr. Keith had a dysthymic disorder, and borderline intellectual functioning. (Tr. 265-8). Dr. Maryman

10

Keith

felt that the plaintiff would have a "seriously limited but not precluded" ability to deal with the public, but would have at least a limited but satisfactory" ability to make all other performance, occupational, and personal-social adjustments. (Tr. 270-1). Dr. Maryman also reviewed records from Adanta, including the functional capacity assessment, although he made no comments. (Tr. 272).

The plaintiff objects to the rejection of Dr. Myers' restrictions, correctly noting that the opinion of a treating physician is normally entitled to greater weight than that of a one-time examiner. The plaintiff argues that, rather than simply dismissing the form signed by Dr. Myers because the alterations made it unclear, the ALJ should have recontacted treating source for clarification. If this had been the only reason given by the ALJ for rejecting the treating physician's opinion, the provisions of 20 C.F.R. Section 404.1512(e), which provides for re-contacting a medical source with a report contains a conflict or ambiguity which must be resolved, would appear to apply to the situation.

However, given the office notes from Adanta following this opinion, the ALJ would have been justified in concluding that Mr. Keith subsequently underwent substantial improvement and that his complaints had not met the 12 month durational requirement. As early as September 2, 2003, less than a month after the residual functional capacity form was signed by Dr. Myers, the plaintiff was reporting to Ms. Lawless that he had "no problems," and that the medication had helped to calm his nerves and had helped him with his sleep. (Tr. 260). While Mr. Keith

Keith

complained of nightmares and difficulty coping in January, 2004, this was evidently situational and related to the death of his mother over the holidays. (Tr. 263). The problem was not mentioned to Dr. Maryman during his February 11, 2004 examination, and the patient also described improvement at his March, 2004 Adanta appointment, when he was again reporting no problems and stated that he was going horse-riding regularly with a friend of his. (Tr. 282-3). *On May 6, 2004, Mr. Keith again suggested there were no problems with his medication, and, on a scale of 1 to 10, described his "life satisfaction" as a "10." (Tr. 278).* His only complaint was that he was bored and had nothing to do. (Id.). Under the circumstances, a reasonable fact finder could have concluded that the "marked" limitations given on the form signed by Dr. Myers were not supported by objective evidence, at least for the durational period required.

The plaintiff also objects to the ALJ's credibility determination, and argues that his complaints of pain were not taken into account. However, there were no medical findings to support complaints of pain, and the plaintiff's own statements regarding pain were equivocal. For instance, he even stated to Ms. Lawless in May, 2004 that his back problem "comes and goes." (Tr. 278).

Lastly, and more persuasively, the plaintiff maintains that the ALJ did not to give proper consideration to the combined effect of the plaintiff's advanced age of 55 years and his vocational liabilities. The Court agrees.

12

Keith

The plaintiff essentially concedes that his situation does not exactly fit either of the situations outlined in 20 C.F.R. Section 404.1562, sometimes called the "worn out worker rule," which provides for a finding of disability, in part, for an individual with no more than a marginal education and work experience for 35 years or more performing only arduous unskilled physical labor. The plaintiff's earnings record does stretch between 1969 and 2001 (Tr. 62-3, 68-70), but this falls slightly short of the 35 years required for the first test.

Subsection (b) of the rule, however, indicates that a disabled profile also exists for individuals who are at least 55 years old, with no more than a limited education, and "no" past relevant work experience. While Mr. Keith was 55 at the time of the decision and was found to have a limited education, he did have past relevant work. Although this might make it seem that he would be ineligible for a finding of disability, his work experience was unskilled and of "low transferability," according to the VE's testimony (Tr. 324) and, significantly, Social Security Ruling 82-63 clarifies that "individuals are considered as having no recent and relevant work experience when they have either performed no work activity within the 15 year period prior to the point at which the claim is being considered *or the work activity performed within the 15 year period does not (on the basis of job content, recency, or duration) enhance present work capability.*" SSR 82-63, p. 4. The Ruling continues, stating that:

13

Keith

> "In the cases involving individuals of advanced age, the only medical issue is the existence of a severe medically determinable impairment. The only vocational issues are advanced age, limited education or less, and absence of relevant work experience. With affirmative findings of fact, the conclusion would generally follow that the claimant...is under a disability."

Id. p, 5.

The findings of fact regarding the plaintiff in the present case appear to fall squarely under the second rule in Section 404.1562. Therefore, the decision will be reversed and an award of benefits will be made as of Mr. Keith's 55th birthday, June 12, 2003; for the period prior to that date, the decision will be affirmed.

This the 22 day of December, 2005.

G. WIX UNTHANK
SENIOR JUDGE

14